777 F.2d 366
 FIREMAN'S FUND INSURANCE COMPANY, a California corporation,
Plaintiff-Appellant,
v.
WASTE MANAGEMENT OF WISCONSIN, INC., a Wisconsin
corporation, Defendant-Appellee,
and
Continental Casualty, an Illinois corporation; Commercial
Union Insurance Company, a Massachusetts corporation; the
Home Indemnity Company, a New Hampshire corporation; Aetna
Insurance, a Connecticut corporation; and American
Motorists Insurance Company, an Illinois corporation, Defendants.
 No. 84-3125.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 30, 1985.
Decided Nov. 18, 1985.
 
 Stephen J. Smirti, Jr., Rivkin, Leff, Sherman & Radler, Garden City, N.Y., for plaintiff-appellant.
 John Duncan Varda, DeWitt, Sundby, Huggett, Schumacher & Morgan, Madison, Wis., for defendant-appellee.
 Before WOOD and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In this diversity declaratory judgment action there is a residue of issues related to whether a law firm had a conflict of interest in two cases pending in state court. The purported conflict is not itself an issue on appeal since by order of the district court new counsel has now been substituted, and that part of the district court's order has not been appealed.
 
 Background
 
 2
 Two cases are pending in the Circuit Court of Dane County, Wisconsin, the State of Wisconsin being plaintiff in one and neighboring landowners plaintiffs in the other. In both cases plaintiffs charge that an abandoned landfill site of Waste Management of Wisconsin, Inc., through Waste Management's negligence or intentional acts, has contaminated ground water making Waste Management liable for statutory forfeiture as well as compensatory and punitive damages. Waste Management sought defense and indemnity by its insurer Fireman's Fund Insurance Company in the state cases and retained the Wisconsin firm of DeWitt, Sundby, Huggett, Schumacher and Morgan, S.C., to defend the state court actions.
 
 
 3
 At the time it was retained, DeWitt, Sundby recognized that a conflict might arise, because Robert Sundby, a shareholder in the firm, is the uncle of Gregory Sundby, an adjacent landowner and plaintiff. Moreover, Robert's mother, Nora, now deceased, was a previous owner of the landfill site, selling it in 1969 prior to her death in 1977 to Richard Sundby, brother of Robert, who operates a business adjacent to the site and possesses an easement across the site. Back in 1962 Robert represented the predecessor of Waste Management, City Disposal, Inc., in negotiating a lease of the site from his mother who had independent counsel, and Robert, Richard, and a third son not involved in this case were the sole distributees of their mother's estate.
 
 
 4
 Because of this family involvement with the site, the firm investigated to determine whether any of the Sundbys were potentially liable in the state cases for their own acts or the acts of others and determined there was no potential liability. It also determined that Robert's relationship with his nephew Gregory would not interfere with the firm's representation of Waste Management. Waste Management was advised about the family involvement but chose to continue the firm as its counsel.
 
 
 5
 On June 8, 1983, Waste Management tendered its defense in the two state court actions to Fireman's Fund, and later also to other insurers not involved in this appeal. On October 17, 1983 Waste Management met with representatives of Fireman's Fund and with the other putative insurers to try to clarify its coverage. The district court found that at least by October 17, 1983, and possibly when Waste Management first tendered its defense to Fireman's Fund, that Fireman's Fund's Wisconsin counsel, Margaret Grabowski, knew of the possible DeWitt, Sundby conflict. At the end of that month Grabowski, on behalf of her client Fireman's Fund, accepted the tendered defense, but under a reservation that Fireman's Fund would not be liable for any intentional wrongdoing. The district court found that at that time Grabowski knew that DeWitt, Sundby continued to represent Waste Management, but failed to make any formal or written objection, nor did she or any other Fireman's Fund representative suggest retaining other counsel.
 
 
 6
 The district court specifically further found that Grabowski knew that DeWitt, Sundby continued to represent Waste Management through April 24, 1984, and relied, without objection, upon that firm to conduct the defense. Nevertheless on April 12, 1984, Fireman's Fund, without consulting Waste Management, retained the Wisconsin law firm of Prosser, Wiedabach, and Quale to take over the defense of Waste Management on the basis that there was a conflict of interest which disqualified DeWitt, Sundby. Two weeks later Fireman's Fund informed Waste Management about the change in its representation. DeWitt, Sundby refused to turn over its Waste Management files to the new firm.
 
 
 7
 This impasse led to a meeting on May 11, 1984, between DeWitt, Sundby and national counsel for Fireman's Fund along with Grabowski to discuss payment of the firm's accrued fees and the future defense plans for Waste Management. At this meeting Fireman's Fund raised the conflict issue. In response DeWitt, Sundby supplied the information gathered in its own conflict investigation which it had initially disclosed to its client. De Witt, Sundby claims the Fireman's Fund attorneys agreed to review this material and to advise DeWitt, Sundby if Fireman's Fund still believed a conflict existed. Fireman's Fund never responded except to file this declaratory judgment action three days later.
 
 
 8
 Waste Management takes the position that it wanted and was entitled to counsel of its own choice since Fireman's Fund was defending under reservation of rights. Waste Management objected to the Prosser firm, not only claiming that the firm had no expertise in environmental litigation but that the firm had a longstanding relationship with Fireman's Fund. Waste Management asserts that although Fireman's Fund represented to Waste Management that the Prosser firm was "independent" counsel, in fact Prosser had represented Fireman's Fund for many years.
 
 
 9
 In its district court brief Fireman's Fund offered to pay the future attorney fees of any firm mutually agreeable to Fireman's Fund and Waste Management. It refused, however, to pay attorney fees for DeWitt, Sundby. The district court picked up on that offer in an effort to resolve the problem. In his August 30, 1984, Memorandum and Order, Judge Shabaz resolved this part of the controversy about as well as anyone could.
 
 
 10
 The district court concluded that Fireman's Fund had at least arguably agreed to defend and indemnify Waste Management against claims based on negligence, but not for any intentional wrongdoing. Intentional wrongdoing was outside the scope of the insurance contract. Although there was justification for Fireman's Fund's acceptance of the defense under a reservation of rights, that reservation of rights nevertheless created an obvious conflict of interest between Waste Management and Fireman's Fund. Citing Maryland Casualty v. Peppers, 64 Ill.2d 187, 355 N.E.2d 24, 29 (1976) the district court pointed out that while it would be in Waste Management's pecuniary interest to have any liability that might be found be based on negligence, it was, on the other hand in Fireman's Fund's interest to have any liability finding based on intentional injury.[1]
 
 
 11
 The court then faced the issue of what the rights and duties of insured and insurer were respecting the selection and payment of counsel where the insurer reserves rights and thereby creates a potential conflict of interest. Fireman's Fund argues that where an insurer reserves rights it is obligated to either hire independent counsel or to pay for counsel selected by the insured, and that it fulfilled this duty when it offered to provide Waste Management with the Prosser firm. Fireman's Fund also claimed that when Waste Management rejected the Prosser firm it thereby relieved Fireman's Fund of any obligation to defend.
 
 
 12
 The district court rejected Fireman's Fund's arguments on several grounds. First it found that the circumstances surrounding the choice of the Prosser firm by Fireman's Fund in view of that firm's long professional relationship with that insurer belied any claim that Prosser qualified as independent counsel. The court also held that even if the Prosser firm were independent, Fireman's Fund's obligation did not end when Waste Management rejected the Prosser firm. It was the court's view that where Waste Management faced exposure far beyond the policy limits the choice of independent counsel by the insurer must at least be by mutual agreement of the parties. The court further noted that mutual agreement was particularly justified where Fireman's Fund had not objected for many months to the DeWitt, Sundby representation. We agree that where the insurer reserves rights the insurer does not also reserve the exclusive right to select counsel, particularly under the circumstances of this case.
 
 
 13
 As to the DeWitt, Sundby conflict itself the court found that Fireman's Fund had failed to establish an actual conflict of interest. There was no likelihood that Robert Sundby would be called as a witness in the state court actions and neither he nor the other members of the Sundby family had any financial or personal interests which could adversely affect the firm's representation of Waste Management. The firm investigated those possibilities in good faith and informed its client that no actual conflict of interest could be found. The district court agreed with that conclusion. The court therefore held that the DeWitt, Sundby firm was entitled to its fees for its representation of Waste Management to date, and was not disqualified from continuing that representation.
 
 
 14
 On the other hand, the district court was disturbed by DeWitt, Sundby's failure to disclose the conflict potential to Fireman's Fund at the same time it had disclosed it to Waste Management. That was sufficient, the district court held, to justify Fireman's Fund's serious reservations about the DeWitt, Sundby firm. The appearance of impropriety was also of concern to the district court. Finally, the district court found that Fireman's Fund had failed to provide truly independent counsel and that it was obligated to pay the fees of DeWitt, Sundby to date.
 
 
 15
 For the future representation of Waste Management the district court adopted the equitable suggestion of permitting Waste Management to select new independent counsel other than DeWitt, Sundby, but subject to the approval and at the expense of Fireman's Fund.[2] There can be no more fair, sensible, and reasonable way for both parties to terminate this collateral dispute and to get on with the trial of the state cases which remain to be decided on their merits.
 
 
 16
 Fireman's Fund has the continuing duty to finance the independent counsel selected by Waste Management and now accepted by it, and to pay DeWitt, Sundby its reasonable fees for services performed during the time DeWitt, Sundby represented Waste Management. We find nothing in the record to suggest that Fireman's Fund has suffered in any way from that temporary representation by DeWitt, Sundby. We have followed Judge Shabaz's line of reasoning because, under the particular circumstances of this case, his solution deserves to be and is hereby affirmed in all respects.
 
 
 
 *
 The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation
 
 
 [1]
 Pursuant to Seventh Circuit Rule 11, Fireman's Fund cites American Home Assurance Co. v. Glenn Estess & Associates, 763 F.2d 1237 (11th Cir.1985), as additional authority for its position that Waste Management's rejection of the Prosser firm breached the insurance contract and relieved Fireman's Fund of any duty to defend or indemnify, including any duty to pay the legal fees of DeWitt, Sundby. American Home, however, is clearly distinguishable from this case because the insurer's reservation of rights in that case did not create a conflict of interest between the insurer and the insured
 In American Home, the insured, Glenn Estess & Associates, d/b/a Sales Consultants of Birmingham ("Sales Consultants"), delayed four months after a discrimination suit was filed against it before notifying its insurer, American Home Assurance Company ("American Home"), of the claim. Before notifying American Home, Sales Consultants had retained private counsel for the discrimination suit. American Home agreed to defend Sales Consultants but reserved the right to deny coverage based on the late notice. Sales Consultants refused to accept American Home's defense until American Home waived its right to contest coverage. Consequently, American Home filed an action seeking a declaratory judgment that Sales Consultants breached the insurance contract by delaying notice of the discrimination suit. Sales Consultants counterclaimed for expenses and attorney's fees incurred in defending the suit. The Eleventh Circuit held that Sales Consultants could not recover expenses incurred in providing its own defense because Sales Consultants refused to sign a "non-waiver" agreement and refused to allow American Home to defend under a reservation of rights.
 Unlike the situation in the case at bar, American Home's reservation of rights did not create a conflict of interest between American Home and Sales Consultants because American Home would have exercised its reservation and contested coverage only if Sales Consultants was found liable in the discrimination suit. Thus, American Home and Sales Consultants actually shared the same immediate goal: to have Sales Consultants relieved of all liability in the discrimination action. Any possible conflict between American Home and Sales Consultants would not have arisen until after the discrimination suit had been settled or litigated. In the case before us, however, Fireman's Fund's reservation of rights immediately created a conflict of interest with Waste Management.
 
 
 [2]
 Since that has been accomplished by the parties that part of the order is not an issue on appeal