James A. SALISBURY, et al., Plaintiffs,

v.

**KROYER HEATING & AIR CONDITIONING,**
Defendant.

Bankruptcy No. C 85–7197, C 85–7646.

United States District Court,
N.D. Ohio, W.D.

Dec. 1, 1986.

Donald E. Miehls, Shumaker, Loop & Kendrick, Jack Gallon, Gallon, Kalniz & Iorio, Toledo, Ohio, for plaintiffs.

John Landwehr, Eastman & Smith, Toledo, Ohio, for defendant.

## MEMORANDUM AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on cross motions for summary judgment and the parties' opposition thereto. This action was brought by six individual plaintiffs as trustees of the Toledo Plumbers & Pipefitters Local No. 50 Pension Plan & Trust, Retirement Plan & Trust, Health & Welfare Plan & Trust and Savings Plan & Trust (hereinafter "Trustees"), against defendant Kroyer Heating and Air Conditioning, Inc. pursuant to § 515 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145, and § 301 of the Labor–Management Relations Act (LMRA) of 1947, as amended, 29 U.S.C. § 185. A first amended complaint was filed by the trustees on July 18, 1985. Jurisdiction is based upon 29 U.S.C. §§ 185(c) and 1132(e).

A separate complaint was filed by plaintiffs International Brotherhood of Electrical Workers, Local 1076 and United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local No. 50 (hereinafter "Unions") against defendant pursuant to § 301 of the LMRA, § 2 of the United States Arbitration Act, 9 U.S.C. § 2, and § 2711.01 of the Ohio Revised Code. On July 31, 1985, this Court ordered the Unions' action, Case No. C 85–7646, consolidated with the Trustees' action. The following discussion applies to both cases.

### FACTS

The Trustees are the duly acting depository for certain benefit plans. (First Amended Complaint at ¶ 3). Specifically, they are trustees for benefit plans established as a result of collective bargaining agreements (hereinafter referred to as "master contracts"), between the Toledo Heating & Air Conditioning Contractors Association (hereinafter the "Association"), and the Unions. (*Id*). Since 1976, there have been three master contracts between the Association and the Unions relevant to this cause. The first was effective from July 1, 1976 through June 30, 1979; the second agreement was effective from July

1, 1980 through June 30, 1982; and the third from July 1, 1982 through June 30, 1985. (Kevin Smith Aff. at ¶ 2). Although each master contract specifically names the above mentioned parties, various contractors, such as defendant, may bind themselves to the master contract by an assent agreement. Generally, such parties are referred to as signatory contractors.

On September 29, 1976, defendant through its president signed an "Assent to Collective Bargaining Agreement." (Kroyer June 13, 1985 Aff. at ¶ 2). By the terms of the assent agreement, defendant, as a signatory contractor, agreed to be bound by the master contract between the Association and Unions and to make certain contributions to benefit plans. (Ex. A attached to Kroyer Aff.). Defendant admits that it is bound by the 1976–1979 master contract (Kroyer Aff. at ¶ 5), however, defendant argues that it is not bound by the 1979–1982 and 1982–1985 master contracts. Consequently, the present action was brought by plaintiffs to enforce rights under the successive master contracts.

In these consolidated actions, the Trustees allege that defendant failed to submit timely payroll reports and data with respect to employees hired. (First Amended Complaint at ¶ 6). The Trustees also claim that defendant is delinquent in contributions to benefit plans. (Id. at ¶ 10–11). They seek liquidated damages and request this Court to order defendant to submit to an audit pursuant to the master contract. Additionally, the Unions request enforcement of a May 17, 1985 arbitration decision which found defendant in violation of the master contract and ordered an audit and payment of funds due. (Union's Complaint). Presently before the Court are the parties' cross motions for summary judgment.

## DISCUSSION

Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Court's function is to determine if any genuine issue exists, not to resolve any factual issues, and to deny summary judgment if such an issue exists. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Tee–Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the Court must construe the evidence in its most favorable light for the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). To summarize, if the movant demonstrates that he is entitled to a judgment as a matter of law, then the Court must next weigh the evidence in a light most favorable for the party opposing the motion; if reasonable minds could differ as to a material fact in issue, then a genuine factual dispute exists and the motion for summary judgment must be denied.

Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P.

It is plaintiffs' position that, by its terms, the assent agreement signed by defendant in 1976 remained binding until defendant

gave notice at least 150 days prior to a current expiration date for the master contract. Because defendant never gave such notice, plaintiffs assert that defendant was bound by the successive master contracts in effect from 1979 through 1985. As additional support, plaintiffs point to defendant's conduct in continuing to abide by the master contract terms until January 1985.

Defendant, on the other hand, takes the position that the assent agreement automatically expired in 1979 as the 1979–1982 master contract took effect. To bolster this argument, defendant offers a 1981 bankruptcy court order which rejects defendant's union contracts as expired.

■ The determinative issue in this cause is whether the defendant is bound by the master contracts in effect since 1979 between the Association and the Unions. For the following reasons, this Court finds that defendant is bound, not only by the original 1976–1979 master contract, but also by the successive master contracts.

First, the Court concludes that defendant agreed to be bound by current master contracts between the Association and the Unions by signing the 1976 assent agreement. That assent agreement provides:

> In consideration of the benefits to be derived and other good and valuable consideration, the undersigned Employer does hereby join in, adopt, accept and become a party to the collective bargaining agreement heretofore made by the Toledo Heating and Air Conditioning Contractors Association with Local Union No. 50, United Association and Local Union No. 1076, I.B.E.W., including all of the provisions therein and any amendments made thereto, and including those provisions pertaining to contributions to Trust Funds, and agrees to be bound by any Trust Agreement hereafter entered into between these parties and agrees to make contributions as required, and authorizes these parties to name the Trustees to administer said Funds and ratifies and accepts such Trustees and the terms and conditions of the Trusts as if made by the undersigned. *This assent shall remain in effect until giving written*

> *notice to the parties not less than 150 days prior to the then current expiration date of this Agreement.*

(Emphasis added).

The foregoing terms expressly indicate that defendant agreed to adhere to the master contract unless and until one party gave written notice of termination. Further, the above language requires such notice to be given at least 150 days prior to the "then current expiration date of this Agreement." Since the agreement itself specifies no exact duration, the language "then current expiration date" indicates a dependence on the master contract for a current expiration date. *See Carpenters Amended and Restated Health Benefit Fund v. Holleman Construction Company*, 751 F.2d 763, 768 (5th Cir.1985). As long as a master contract continues in force, and no notice is given to terminate an assent agreement, the assent continues in effect. *Id.* at 767.

In this case, the defendant admits to being bound by the 1976–1979 master contract. (Kroyer Aff. at ¶ 5). That contract in a "Length of Agreement" clause contained at Article XXVIII states:

> This Agreement shall be in full force and effect from July 1, 1976 to and including June 20, 1979, and from year to year thereafter unless either party notifies the other in writing at least one hundred fifty (150) days prior to any annual date of expiration that a change of terms is requested; provided, however, that both parties may mutually agree to alter or amend this Agreement at any time.

According to the foregoing clause, the 1976–1979 master contract automatically continued from year to year. There were no gap periods between master contracts. (Kevin Smith Aff. at ¶ 2). Thus, the assent agreement also continued to exist during the pendency of the master contract, unless proper notice was given. *Carpenters Amended and Restated Health Benefit Fund*, 751 F.2d at 767. Defendant did not give any notice of termination. (Curley Aff. at ¶ 3; Kevin Smith Aff. at ¶¶ 3–4). Therefore, defendant remains bound, by

the terms of the assent agreement, to the successive master contracts.

Second, even assuming *arguendo* that defendant is not bound by the 1979–1985 master contracts in accordance with the assent agreement and the length clause in the 1976–1979 master contract, defendant is estopped, because of its conduct, from denying that its original promise did not bind it to successive contracts. A labor agreement may be adopted through conduct manifesting an intention to be bound. *Fireman's Fund Insurance Co. v. Waste Management of Wisconsin, Inc.,* 777 F.2d 366, 373 (7th Cir.1985); *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corp.,* 724 F.2d 1458, 1459 (11th Cir.1983); *N.L.R.B. v. Haberman Construction Co.;* 641 F.2d 351, 356 (5th Cir.1981).

It is undisputed that defendant never terminated the assent agreement nor gave notice of an intent not to be bound by the master contract. (Curley Aff. at ¶ 3; Kevin Smith Aff. at ¶ 4). Defendant continued to send payroll reports required by the master contract to one union through January 1983 (Frazier Aff. at ¶ 4), and to the other union through January 1985. (Curley aff. at ¶ 5). Defendant paid contributions totaling an amount in excess of $11,000.00 into the benefit plans fund on behalf of several employees from January 1981 through July 1982. (Ex. A–Q2 attached to Frazier Aff.). At defendant's request, in accordance with the master contract, one union referred an employee to defendant in January 1982, although that employee worked at defendant less than one month. (Curley Aff. at ¶ 6; Kroyer January 10, 1986 Aff. at ¶ 6). Defendant attended a grievance hearing pursuant to the master contract on April 19, 1982. (Curley Aff. at ¶ 7). Defendant exchanged correspondence in 1983 regarding submission of payroll reports under the master contract. (Curley Aff. at ¶¶ 8–9).

This Court concludes that by enjoying contract benefits and abiding by contract provisions after 1979, the defendant manifested an intent to be bound by the 1979–1982 and 1982–1985 master contracts. Thus, defendant is estopped from denying its assent to be bound by the successive master contracts. *See, e.g., Sheriff v. Medel Electric Co.,* 412 A.2d 38, 42 (D.C.Ct. App.1980) (The company bound itself to the contract by its own course of performance; observing contract terms for eight years and making monthly contributions to the trust fund is "unlikely conduct for one not bound to do so"); *Carr v. Settle Construction Co.,* 11 Wash.App. 336, 522 P.2d 849 (1974) ("After 15 years of operating under the terms of the collective bargaining agreements, [the Company] is estopped to deny that its original promise did not bind it to successive ... contracts").

Third, defendant asserts that an October 20, 1981 bankruptcy court order is binding upon the parties to this action. In that order, the bankruptcy court confirmed a modified Chapter 11 reorganization plan. The plan at Article 4 states that any employment contracts with defendant are expired and rejects any obligations under such contracts. Plaintiffs' claims, however, are not barred by the bankruptcy court's order. The doctrine of res judicata applies, for due process reasons, only against parties and their privies, and does not affect strangers to the litigation. *Davis v. McKinnon and Mooney,* 266 F.2d 870, 873 (6th Cir.1959). *See also City of New York v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). (The statutory command for notice [to creditors] embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights.). Where plaintiffs, as creditors, were not given notice of the bankruptcy proceedings, they are not precluded by the bankruptcy court order from suing defendant on the master contracts.

Finally, the Unions seek enforcement of a May 17, 1985 arbitration decision. A grievance had been filed alleging that defendant hired non-union employees in violation of the master contract. Defendant did not attend the arbitration hearing. The Board of Arbitration found that it was without power to decide whether defendant

was bound by the current master contract. It heard evidence, however, and, finding several contract violations, ordered defendant to submit to an audit as provided for in the master contract and to make payments accordingly. Defendant has refused to comply with the arbitration decision. This Court finds, as discussed above, that defendant is bound by the master contracts in effect from 1979 through 1985. Therefore, defendant breached the master contract by failing to comply with the arbitration decision.

In light of the foregoing, defendant has failed to raise a genuine issue of material fact as to plaintiffs' claims for relief. Plaintiffs therefore are entitled to judgment as a matter of law. Accordingly, plaintiffs' motions for summary judgment are found to be well taken.

It is therefore,

ORDERED that the Trustees' and Unions' motions for summary judgment are granted.

FURTHER ORDERED that defendant's motion for summary judgment is denied.

FURTHER ORDERED that defendant comply with the May 17, 1985 arbitration decision. Defendant is ordered to submit, within sixty (60) days of the date of this order to an audit for the period from January 1984 through June 1985, carried out pursuant to the terms set forth in Article XIV, Paragraph D of the 1982–1985 master contract.

FURTHER ORDERED that this cause is set for hearing on the issue of damages on MONDAY, FEBRUARY 9, 1987 at 2:00 P.M.